G. W. G. Payne *v.* C. D. Berry, Administrator, and others.

## April Term, 1876.

Demurrers to several parts of a bill. — A demurrer must be founded on some point of law which goes to the entirety of the facts on which particular relief is properly sought, not to separate facts constituting connected parts of a case; and, therefore, where the ground of the bill, as well as the relief sought, is single, separate demurrers to separate paragraphs of the bill are necessarily bad.

Demurrer to prayer of bill. — A demurrer to a prayer for incidental relief is bad.

Demurrer for misjoinder. — Although the person who is improperly made a defendant may demur for misjoinder, a proper defendant cannot demur for such misjoinder.

Demurrer to discovery. — A demurrer will not lie to the bill, so far as it seeks discovery, because the oath is waived.

Demurrer bad for uncertainty. — A demurrer to all that part of a bill not pleaded or demurred to is bad for uncertainty.

*Guild & Dodd,* for complainant.

The Chancellor : — The defendants the Molloys have filed several demurrers to the bill.

The bill alleges that on October 21, 1865, the complainant became indebted to R. H. Elam, the intestate of the defendant Berry, for land, and executed to him two promissory notes, one due July 1, 1866, for $15,000, the other due October 21, 1866, for $5,000 ; that one Charles A. Merrill, as a creditor of Elam, on December 28, 1865, filed his bill in this court against Elam, complainant, and others, and attached the said indebtedness of complainant to Elam, and sought to subject the same to the satisfaction of Elam's debt to said Merrill, and, as a means to this end, enjoined complainant from paying to Elam any portion of said debt ; that Elam was guardian of Thomas, Robert H., and E. B. Molloy, and notified complainant, before the filing of Merrill's bill, that his said wards had agreed to receive said

notes, upon a settlement made by him as guardian with them; that shortly thereafter complainant received a letter from defendant R. H. Molloy, stating that Elam had transferred complainant's said notes to him and his brothers, on a settlement with him as guardian; that Elam, at the time he notified complainant of the transfer, represented that he wanted the money on the notes to be sent to him, as guardian of the Molloys, and complainant forwarded to him a check on the National Park Bank, New York, dated January 5, 1866, for $10,000, to be credited on the $15,000 note, which check was paid, but complainant does not know whether Elam or the Molloys received the proceeds, though Elam gave a receipt for the same, as guardian of the Molloys; that, on June 5, 1866, the said note for $15,000 was presented to complainant for payment by Thomas Molloy, and he paid thereon, on that day, $1,000; that the note was again, on April 20, 1866, presented to him for payment by one of the Molloys, and he paid him thereon $1,000; that these payments were made in good faith, under the belief that the note was owned by the Molloys; that, in addition to the assurances of Elam that the assignment had been made, he received letters from Thomas and Robert H. Molloy, stating that said note had been transferred to them, and demanding payment; that complainant, in his answer to Merrill's bill, stated the facts as above, and insisted that the payments were made in good faith; that Merrill filed an amended and supplemental bill, charging that the said payments had been made by collusion of complainant with Merrill; that complainant's counsel neglected to answer this bill; that, on February 7, 1870, the Molloys, who had been made defendants to this supplemental bill, filed a joint answer, admitting that Elam had assigned to them the said notes of complainant, without their agency or knowledge, and that the assignment was without consideration, the said Elam having previously settled with them as guardian, and paid them up; and they disclaimed any interest

in the notes, or any recognition of his act. This answer contained the following sentence, through which, however, a black line was run : " They deny they received any money from Payne, or gave a receipt for any, or had anything to do with it." That, until the filing of this answer, complainant had no suspicion of the fraudulent conduct of the Molloys and Elam. .

The bill further alleges that, at the hearing of the cause of *Merrill* v. *Elam and others*, at the April term, 1872, of this court, it was decreed that complainant, Payne, was entitled to a credit for the $10,000 payment, but not for the payments of $1,000 each, and that Merrill should recover from complainant, Payne, the residue of the amount due on the land-notes, subject only to the first credit as aforesaid ; and this decree, upon appeal by Payne, was affirmed by the Supreme Court.

The bill then charges : " That the defendants Thomas, E. B., and R. H. Molloy fraudulently and corruptly conspired with R. H. Elam to defraud him, and, in pursuance of the fraudulent scheme, the said Molloys feloniously obtained from him the sum of $2,000, at the date hereinbefore stated, on said $15,000 note ;" * * * " that they either obtained said money for their own use, or for the benefit of R. H. Elam, and afterwards, on July 7, 1870, they falsely denied, under oath, having any agency in the matter, or that they ever recognized it, and thus forced complainant to fail in getting a credit therefor on his said note ; that the fraud was not discovered by complainant until it was partially disclosed by their answer aforesaid."

The bill states that Elam has died intestate, and defendant Berry has been appointed his administrator. It charges that complainant " is informed, and so charges, that said defendants, the Molloys, will, and are about to, dispose of their property, with the fraudulent intent to hinder and delay the complainant in the collection of his debt." Upon this charge an attachment is prayed and obtained.

The prayer of the bill is for a decree against the Molloys and the estate of Elam for the said sum of $2,000, with interest; that the said Molloys, who have complainant's said notes in their possession, be required to file the same with their answers; that the credit of $2,000 be held for naught, and that the notes themselves be cancelled, inasmuch as a decree has been rendered against complainant in the Merrill case for the full amount thereof, less the credit of $10,000, and the decree satisfied by a sale of the land.

The object of the bill is to charge the Molloys and Elam's estate with the two payments which were held to have been in violation of Merrill's injunction, upon the ground of an alleged fraudulent combination between the Molloys and Elam to the damage of the complainant; and jurisdiction is sought to be conferred upon this court by means of an original attachment sued out under one of the provisions of the attachment law. The structure of the bill is free from complication, its *gravamen* easily ascertained, and the relief sought single.

The defendants the Molloys have filed a plea in abatement to a single paragraph of the bill, and six demurrers to different parts of the bill.

I am not able to concur with the learned counsel for the defendants in thinking that the mode of defence adopted is admissible. To allow half a dozen demurrers to a bill of so simple a character would gravely hazard the simplicity of equity pleading, and deprive equity practice of much of the praise to which it is at present justly entitled.

The object of allowing a demurrer to be filed to a bill at all is, as I have had occasion to say at a former term, in the case of *Brien* v. *Buttorff*, 2 Tenn. Ch. 523, to save costs and bring litigation to a speedy close. The ground of a general demurrer must be a " neat, short point," upon which it is plain the bill, or that part of it demurred to, would be dismissed with costs at the hearing. *Brooks* v. *Hewitt*, 3 Ves. 253. It must be founded on some dry point

of law destructive of the relief sought for.   *Verplank* v. *Caines*, 1 Johns. Ch. 57.   It must go, as a general rule, to the facts on which relief is sought (*Averill* v. *Taylor*, 5 How. Pr. 478 ; *Beale* v. *Hayes*, 5 Sandf. 640), and to the merits.   *Roberdeau* v. *Rous*, 1 Atk. 544.   A demurrer, therefore, to a single clause of a bill, which is only a link in the chain of charges, must necessarily be had.   *Crouch* v. *Hickin*, 1 Keen, 389.   The reason is that the court cannot know what part such a clause may play in the final battle, by taking it separate from its fellows.   *Western Ins. Co.* v. *Eagle Fire Ins. Co.*, 1 Paige, 284.   The cause which will sustain such a demurrer must be limited to the clause itself, and this can rarely ever be the case except where the demurrer is special, upon a matter of form.   It is obvious that a bill must be very exceptional which would admit of being cut up into paragraphs, each to form the subject of a separate general demurrer.

If the jurisdiction of the court depends upon the attachment which has been sued out, it is obvious that a plea in abatement of the attachment is a plea to the whole bill. If the jurisdiction rests upon the cause of action, and the facts alleged do not make a good cause of action, or do show that the cause of action is barred by the statute of limitations, a single demurrer to the whole bill, assigning the two causes, would suffice.   A demurrer to separate paragraphs is bad, because in so simple a case, where the ground of the bill and the relief sought is single, each paragraph constitutes a part of that ground, not the whole of it, and cannot include the whole relief.

The plea is to that part, " and only that part," of the bill which is in the following language, to wit : " He has reason to believe and is informed, and so charges, that said defendants will, and are about to, dispose of their said property, with the fraudulent intent to cheat, hinder, and delay complainant in the collection of his debt," and is a denial of the charge.   The complainant has taken issue

on this plea, and no question is now before me in regard to it.

The first demurrer is to so much of the bill as charges that defendants and Elam assured complainant that the land-notes had been indorsed to defendants before the Merrill bill was filed, and that the assurance was fraudulently made, and that the defendants feloniously obtained $2,000 from complainant; and assigns as causes of demurrer that the remedy is at law, and this court has no jurisdiction. The argument in support of this demurrer is that the demand is in tort, and the remedy at law. But suppose the issue on the plea in abatement should be found in favor of the complainant, then the jurisdiction would be under the attachment by statute. And although the foundation of the complainant's claim may be in the fraud and wrong, yet, if the Molloys received the money, the tort may be waived, and the recovery be upon the implied *assumpsit.* *Boyd* v. *Logan*, Cooke, 394; *Alsbrook* v. *Hathaway*, 3 Sneed, 454. It does not require an express waiver of the tort in the bill to raise this *assumpsit*. It is sufficient if the facts justify relief on this ground upon the final hearing. The cause of demurrer assigned, therefore, to sustain the objection of the want of jurisdiction must cover a recovery in contract as well as in tort. Another equity of the bill, in this connection, not covered by the objection made to jurisdiction, is that it seeks to rectify the decree in the original cause, on the ground that the defendants, by falsely denying in their answer that they had any thing to do with the assignment of the notes, "forced complainant to fail in getting a credit" for the payments made by him on his notes. The bill is not only that the defendants made false assurances and feloniously obtained the $2,000, but they, by their false swearing, deprived complainant of a credit to that extent on his notes. The demurrer covers only the former allegation, not the latter. It is to a part, not the whole, of the facts on which the equity rests, and

which equity fixes the jurisdiction, and is, therefore, fatally defective.

The second demurrer is to so much of the bill as asks that the land-notes be surrendered and cancelled, assigning for causes that the bill does not allege that defendants have possession of the notes, that the notes are barred by the statute of limitations, and that such delivery and cancellation are unnecessary to the relief sought. The demurrer here is to part, and perhaps an unnecessary part, of the prayer of the bill. But a demurrer to a prayer for incidental relief is not admissible. *Miller* v. *Jamison*, 9 C. E. Green, 41. For the defendant may avail himself of the objection at the hearing, with every possible advantage that he could obtain by a demurrer. And the court ought not thus to be called on preliminarily to examine the case in all its bearings, for the purpose of determining what relief the complainant may be entitled to at the hearing, when all the facts and circumstances are fully developed. *Western Ins. Co.* v. *Eagle Fire Ins. Co.*, 1 Paige, 286.

The third demurrer is to that part of the bill which makes demurrants and Elam's administrator joint defendants, because the bill shows no privity of connection. But, it seems to me, the fraudulent combination is a sufficient connecting link to sustain the joinder of the parties. For, although an action for the tort might not survive, the action based upon the implied *assumpsit* would. *Dorsheimer* v. *Rorback*, 8 C. E. Green, 46. And, besides, if the bill is good against the Molloys, the fact that another person is improperly made a co-defendant, while it may be a ground of demurrer in favor of the latter, is not of the former. *Whitbeck* v. *Edgar*, 2 Barb. Ch. 106; *Miller* v. *Jamison*, 9 C. E. Green, 41; *Roberts* v. *Roberts*, 2 Phill. 534.

The fourth demurrer is to so much of the bill as seeks discovery, because the oath is waived. But, if so, every bill which waives the oath would be demurrable as to the discovery, directly in the teeth of the statute. The extent

of discovery, it is true, is limited by such waiver to the discretion of the defendant, for the answer as a discovery cannot be excepted to. The defendant must, however, answer sufficiently to make an issue. Besides, a demurrer does not lie to the discovery, which is merely incidental to the relief sought. *Morgan* v. *Harris*, 2 Bro. C. C. 12.

The fifth demurrer is to that part of the bill which charges that complainant paid defendants $2,000 in 1866, because any cause of action for the money is barred by the statutes of limitation of six and three years. If the tort may be waived, the limitation would be six years; and the bill, to avoid this bar, alleges that the fraud was concealed until the filing of the defendants' answer, which was within six years before bill filed. The demurrer does not cover this allegation, and is bad.

The sixth demurrer is to all that part of the bill not pleaded or demurred to, for want of jurisdiction. But this is bad for uncertainty. The court cannot be required to look into the bill to find out what part of it has not been pleaded or demurred to. *Devonsher* v. *Newenham*, 2 Scho. & Lef. 205.

The demurrers are each defective, and must be overruled. But as some of the causes assigned seem to have merits if assigned to the whole bill, instead of isolated paragraphs, and as there are apparently some difficulties in the way of sustaining the bill, not suggested by the demurrers, I will permit the defendants to rely upon matters of demurrer in their answers.